United States District Court
Northern District of California

1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    ESTATE OF DONALD NELSON, et al.,        Case No.  21-cv-03225-CRB

9              Plaintiffs,
                                             **ORDER GRANTING MOTION TO**
10         v.                                **DISMISS**

11   COUNTY OF ALAMEDA, et al.,

12             Defendants.

13         This action arises from the death of Donald Nelson.  Nelson died from injuries that

14   he suffered after being attacked by another inmate while incarcerated in Santa Rita Jail.

15   Plaintiffs are Nelson's siblings who are his successors in interest.  Plaintiffs have filed suit

16   against Defendants Alameda County, Deputy Travis Egan, Lieutenant B.D. Barker[1], Does

17   1–10 who are unidentified Alameda County employees, California Forensic Medical

18   Group, and Does 11–20 who are unidentified California Forensic Medical Group

19   employees.  Plaintiffs allege that Defendants are liable for Nelson's death under state and

20   federal law.  Alameda County, Deputy Travis Egan, Lieutenant B.D. Barker, and Does 1–

21   10 ("County Defendants") move to dismiss Plaintiff's First Amended Complaint ("FAC")

22   (dkt. 29).  See Motion to Dismiss ("MTD") (dkt. 30).  For the reasons set forth below, the

23   Court grants the motion to dismiss with leave to amend.

24

25

26   _____

27   [1] The FAC names Lieutenant B.D. Barker as a defendant, but Plaintiffs have not yet submitted
     proof of service for Barker.  See Summons Issued (dkt. 12); County Defendants Reply (dkt. 37) at
     1, fn. 1 (Barker "has not been served as of the filing of this Reply").  The claims against Barker
28   are dismissed on this ground alone.  Assuming that Barker was properly served, the claims against
     him also fail for the reasons discussed below.

United States District Court
Northern District of California

## I.    BACKGROUND

### A.    Factual Background

On May 1, 2020, Oakland Police Department officers arrested Nelson for an unspecified offense.  See FAC ¶ 27.  Nelson was wearing a hospital gown at the time of his arrest.  Id. ¶ 28.  The officers transported Nelson to Santa Rita Jail for booking.  Id. ¶ 27.

At Santa Rita Jail, Deputy Egan and Deputy Does 1–10 allegedly performed an "insufficient classification evaluation" of Nelson during the intake process.  Id. ¶ 29.  While the deputies allegedly knew that Nelson "suffered from mental illness and had previously been assigned to mental health housing," they failed to assign him to mental health housing in this case.  Id. ¶ 30.  In addition, the deputies "knew or should have known that Nelson should be placed in segregated housing due to his arrest and conviction record which made him prey and vulnerable to attack by other inmates."[2]  Id.

Instead of placing Nelson in "segregated housing," the deputies put him in a cell with Hayward Harrison Blake IV ("Blake").  Id.  They did so even though Blake and Nelson both "had a behavioral health flag," indicating that they both suffer from mental illness.[3]  Id.  As with Nelson, the deputies "performed an insufficient classification evaluation of Blake."  Id. ¶ 33.  In addition, despite being so severely intoxicated at the time of his arrest that he "was unable to stand," the deputies failed to place Blake in a sober cell.  Id. ¶ 34.

At the time Nelson and Blake were celled together, other cells were "empty and available."  Id. ¶ 37.  The cell that housed Blake and Nelson had only "a small window so that deputies could not reasonably observe them."  Id.  After placing Nelson with Blake, the deputies "failed to observe and monitor Nelson's safety and welfare" and "failed to conduct adequate safety checks."  Id.  Within "an hour" of being celled together, Blake

---

[2] Nowhere does the complaint explain what part(s) of Nelson's arrest and conviction record allegedly made him prey and vulnerable to attack.  See generally FAC.
[3] The complaint does not provide any details regarding either Nelson or Blake's mental illness(es).  See generally FAC.

1  violently assaulted Nelson.  Id.  ¶ 38.  Nelson screamed for help and deputies arrived at the

2  cell to find Blake stomping Nelson's head and kicking his body.  Id. ¶ 40.

3          When the deputies arrived at the cell, Nelson "lay on the floor in the fetal position."

4  Id.  Despite clear signs of pain and distress, deputies allegedly "delayed their request to

5  paramedics."  Id.  While the complaint sheds no light on the timing, paramedics were

6  called, but the deputies "failed to provide any care to Nelson" while awaiting their arrival.

7  Id.

8          Paramedics ultimately arrived and transported Nelson to Eden Medical Center.  Id.

9  ¶ 41.  Nelson was diagnosed with "traumatic brain injury" and "multiple fractures

10  including to his back and ribs."  Id. ¶ 41.  He "succumbed to his injuries and died" on June

11  19, 2020.  Id. ¶ 44.

12          **B.      Procedural History**

13          Plaintiffs filed an FAC on July 30, 2021.  See FAC.  The FAC asserts the following

14  federal and state law claims against County Defendants:

15      • Count Two: Failure to provide medical care and safe conditions under 42 U.S.C.

16          § 1983 against Deputy Egan and Does 1–10.  Id. ¶¶ 55–57.

17      • Count Three: Monell claim under 42 U.S.C. § 1983 against Alameda County.

18          Id. ¶¶ 58–64.

19      • Count Four: Failure to supervise and train under 42 U.S.C. § 1983 against

20          Lieutenant Barker.  Id. ¶¶ 65–81.

21      • Count Five: Negligence under California state law against all County

22          Defendants.  Id. ¶¶ 82–89.

23      • Count Six: Failure to provide medical care under Cal. Gov. Code § 845.6 against

24          all County Defendants.  Id. ¶¶ 90–95.

25  County Defendants move to dismiss each claim.  See MTD.  Plaintiffs oppose the motion.

26  Opposition to MTD ("Opp.") (dkt. 35).

27  **II.    LEGAL STANDARD**

28          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be

United States District Court
Northern District of California

3

dismissed for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either "a cognizable legal theory" or "sufficient facts alleged" under such a theory.  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  This is not a "probability requirement," but it requires more than a "sheer possibility" that the defendant is liable: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

Courts should allow a plaintiff leave to amend unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246–47 (9th Cir. 1990).  To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## III.   DISCUSSION

Plaintiffs allege three federal and two state law claims against County Defendants. County Defendants move to dismiss the claims arguing that (1) Plaintiffs lack standing under California's survivorship laws to assert all of their claims (MTD at 5–6); (2) the federal claims lack factual support (id. at 7–13); (3) various statutory immunities foreclose the state law claims (id. at 13–14); and (4) the state law claims lack factual support (id. at 15–17).  Many of these arguments have merit, and all of the claims against County Defendants are dismissed for the reasons discussed below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### A.    Standing to Bring Survivorship Claims

Whether Plaintiffs have standing to bring their claims must be addressed as a threshold issue.  See MTD at 6–7.  County Defendants correctly point out that Plaintiffs may only bring their claims as survival actions[4] and that certain standing requirements apply to survival actions.[5]  See id.  Plaintiffs do not contest either point.  See Opp. 3–4.

To bring a survival action, a plaintiff must demonstrate "that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action."  Hayes v. Cty. of San Diego, 736 F.3d 1223, 1228–29 (9th Cir. 2013).

California Code of Civil Procedure § 377.32 sets forth the requirements for a survival action here.  Cal. Civ. Proc. Code § 377.32.  Among other requirements, § 377.32 requires a plaintiff to file an affidavit that (1) is executed, (2) states that "[n]o other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceedings," and (3) attaches a "certified copy of the decedent's death certificate."  See id.

The three affidavits that Plaintiffs have filed in an effort to comply with § 377.32 fail to meet these three requirements.  See Declaration of Successor in Interest (dkt. 33) ("first affidavit"); Declaration of Successor in Interest (dkt. 34) ("second affidavit"); Declaration of Successor in Interest (dkt. 38) ("third affidavit").[6]  First, none of the

---

[4] A "survival action" (also known as a "survivorship action") is a cause of action that accrued to a decedent during their life and is brought by a decedent's successors in interest.  See J.K.J. v. City of San Diego, 2020 WL 738178, at *2–3 (S.D. Cal. Feb. 13, 2020).  It contrasts with a wrongful death claim, by which others bring claims for personal injuries that they suffered because of a decedent's wrongful death.  Id.

[5] Counts Two, Three, and Four are § 1983 claims that can only be brought as survivorship claims.  See J.K.J., 2020 WL 738178, at *4 ("Section 1983 actions may only be survival actions.").  Counts Five and Sixth are state law claims that Plaintiffs cannot pursue individually and therefore must pursue as survivorship claims.  See generally Opp.; see also S. Cal. Gas Leak Cases, 18 Cal. App. 5th 581, 587 (2017) ("no duty to prevent purely economic loss to third parties under any negligence theory"); Thing v. La Chusa, 48 Cal. 3d. 644, 647 (1989) (relatives not present at scene cannot state NIED claim); Lawson v. Superior Ct., 180 Cal. App. 4th 1372, 1391 (2010) (no derivative claims under § 845.6).

[6] The affidavits are identical, except that each contains the signatures of only some of the Plaintiffs.  In total, eleven of the twelve Plaintiffs have signed one of the three affidavits.

affidavits were executed by Plaintiff Otha Nelson.  Second, none of the affidavits state that "[n]o other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceedings," as required by § 377.32(a)(6).  Third, none of the affidavits attach a "certified copy of the decedent's death certificate," as required by § 377.32(c).  Accordingly, Plaintiffs have not satisfied the requirements for bringing a survival action under California law.[7]  All of the federal and state law claims against County Defendants are dismissed on this ground alone.  See J.K.J., 2020 WL 738178, at *3.

### B.    Federal Claims

Even assuming that Plaintiffs established standing for their three federal claims, these claims are separately subject to dismissal because no well-pled facts support them.

#### 1.    Count Two

In Count Two, Plaintiffs allege that Deputy Egan and Deputy Does 1–10 ("Deputy Defendants") failed to provide safe conditions and medical care for Nelson in violation of his Fourteenth Amendment rights.  FAC ¶¶ 55–57.

Nelson was a pretrial detainee while incarcerated at Santa Rita Jail.  See id. ¶ 27.  A pretrial detainee may state a claim under the Fourteenth Amendment against jail officials when the officials act with "deliberate indifference" to threats of serious harm or the need for medical care.  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067 (9th Cir. 2016); Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018).  To state a deliberate indifference claim, a pretrial detainee must show:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the

---

[7] Aside from the three deficiencies identified above, Plaintiffs' affidavits otherwise comply with § 377.32.

United States District Court
Northern District of California

1    high degree of risk involved—making the consequences of the defendant's

2    conduct obvious; and

3         (4) By not taking such measures, the defendant caused the plaintiff's injuries.

4    Castro, 833 F.3d at 1071; Gordon, 888 F.3d at 1125.  "With respect to the third element,

5    the defendant's conduct must be objectively unreasonable, a test that will necessarily turn

6    on the facts and circumstances of each particular case."  Id. (citation omitted).

7         Here, the complaint falls short of stating a claim based on either a failure to provide

8    safe conditions or failure to provide medical care theory.

9                              **a.    Failure to Provide Safe Conditions**

10        The failure to provide safe conditions claim centers on two sets of overlapping

11   allegations: (1) Deputy Defendants failed to perform adequate mental health screenings of

12   Nelson and (2) Deputy Defendants failed to adequately screen Blake and place Blake in a

13   sober cell.  See FAC ¶¶ 28–34.  Both sets of allegations need more factual support.

14        Plaintiffs' first theory is that Egan performed an "insufficient classification" of

15   Nelson and failed to properly evaluate Nelson's "mental illness."  FAC ¶¶ 28–30.  As a

16   result, Egan "housed Nelson with an inmate who was a risk to his safety."  Id. ¶ 29.

17   The complaint fails to provide sufficient factual allegations to support these claims.  For

18   example, it does not explain what the "classification" of Nelson involved, why that

19   classification was "insufficient," or why the "insufficient classification" created a high risk

20   of harm that would have been obvious to a reasonable officer.  Nor does the complaint

21   explain what mental illness Nelson had or why that mental illness created risks that Nelson

22   would be harmed.  Similarly, it provides no detail regarding Nelson and Blake's

23   "behavioral health flags" or why those flags did or should have put deputies on notice that

24   there was a substantial risk that Nelson would suffer serious harm.[8]  See Morales v. City of

25

26   ───────────────

27   [8] Allegations based on Nelson's "arrest and conviction record" fall short for the same reasons.
     Plaintiffs allege that Nelson's arrest and conviction record "made him prey and vulnerable to
     attack by other inmates."  See FAC ¶ 30.  But they provide no specifics as to why that might be so.

28   Plaintiffs do not identify any specific arrests or convictions, much less explain why they would
     make Nelson vulnerable to attack.

United States District Court
Northern District of California

1    N. Las Vegas, 272 F. Supp. 3d 1216, 1222 (D. Nev. 2017) ("double-celling an inmate with

2    mental health issues, without more, is not constitutionally impermissible").

3           Plaintiffs' second theory is that Deputy Defendants (1) performed an "insufficient

4    classification" of Blake and (2) failed to place Blake in a sober cell even though he was

5    severely intoxicated.  FAC ¶¶ 33–34.  The complaint does not contain sufficient detail to

6    render plausible the conclusion that the deputies' alleged failures regarding Blake's intake

7    placed Nelson at a substantial risk of harm, or that the high risk of harm would have been

8    obvious to a reasonable officer.  As with Nelson, Plaintiffs fail to provide any detail

9    regarding what Blake's "classification" involved or why it was insufficient.  Plaintiff also

10   fail to adequately allege why these failures placed Nelson at a substantial risk of harm.

11          Plaintiffs do allege that Blake was severely intoxicated, but they do not adequately

12   allege that Blake's intoxication created a risk of violence, let alone an obvious one.  For

13   example, the complaint does not allege that Blake had acted violently before being placed

14   in the cell or otherwise threatened violence.  Cf. Castro, 833 F.3d at 1065 (complaint stated

15   a claim for failure to protect where cellmate was arrested "after he shattered a glass door

16   with his fist," was "acting 'bizarre' at the time of his arrest," and was characterized on the

17   intake form as "combative").  To the contrary, the complaint alleges that Blake was so

18   intoxicated "he was unable to stand."  FAC ¶ 34.  Being intoxicated to the point of

19   incapacitation does not suggest that Blake posed an obvious risk of serious harm to

20   Nelson.

21          Plaintiffs' failure to monitor allegations are also deficient.  Plaintiffs allege only

22   that Nelson and Blake were placed in a cell with "only a small window" where "they could

23   not be reasonably monitored" and that the deputies failed to adequately monitor Nelson

24   and Blake.  Id. ¶¶ 37, 39.  But there are insufficient facts alleged in support of either of

25   these allegations—Plaintiffs allege no facts to suggest that the Deputy Defendants knew or

26   should have known that they needed to monitor Nelson and Blake particularly closely and

27   no facts suggesting that Deputy Defendants' monitoring of the cell was otherwise

28   deficient.  The current allegations are too conclusory to state a claim.

8

### b. Failure to Provide Medical Care

Plaintiffs' failure to provide medical care theory is even more thinly pled than their failure to protect theory. Plaintiffs allege that after stopping Blake's assault of Nelson, the deputies "delayed their request to paramedics" and "failed to provide any care" while awaiting the paramedics. FAC ¶ 40. Plaintiffs offer no facts to support these allegations. For example, the complaint provides no detail on how long the deputies "delayed" in calling paramedics, when the paramedics arrived, or what type of care the deputies should have provided in the interim. The complaint thus fails to state a claim under this theory.

### 2. Count Three

In Count Three, Plaintiffs allege a <u>Monell</u> claim against Alameda County. FAC ¶¶ 58–64; <u>see also</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978). Plaintiffs contend that the "individual Defendants' wrongful conduct was the result of policies, practices and customs relating to detained individuals at the Santa Rita Jail." <u>Id.</u> ¶ 61.

<u>Monell</u> established that a municipality may be liable for policies, practices or customs that reflect "deliberate indifference to the constitutional rights of its inhabitants." <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 392 (1989). To state a <u>Monell</u> claim, a plaintiff "must demonstrate that an official policy, custom, or pattern on the part of [the municipality] was the actionable cause of the claimed injury." <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1143 (9th Cir. 2012) (citation and internal quotation omitted). This can be done in three ways:

(1) A public entity may be held liable when it acts pursuant to an expressly adopted policy.

(2) A public entity may be held liable for a longstanding practice or custom.

(3) A public entity may be held liable when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

<u>See</u> <u>Castro</u>, 833 F.3d at 1067.

Here, the complaint does little more than recite the elements of the cause of action. See FAC ¶ 47 ("The Alameda County Sheriff's Department and County of Alameda maintained customs, policies, and practices which caused or contributed to the violations of subordinate deputies and other personnel."). Plaintiffs identify no specific policy, custom, or practice that allegedly caused Nelson's injury. Nor do Plaintiffs allege sufficient facts to support the inference that an actionable policy, custom, or practice existed. For example, there are no allegations of previous specific incidents involving Santa Rita Jail deputies and no allegations of any pattern of a particular form of misconduct. While Plaintiffs point to two government reports that apparently found that there may be widespread misconduct at the Santa Rita Jail, they provide no details on the content of either report. The complaint does not elaborate on the reports' findings, much less show how those findings relate to Plaintiffs' allegations here.

Plaintiffs argue that they are not required to plead "the precise contours of a policy or custom prior to having engaged in discovery." Opp. at 9–10. While that is true, they also "may not simply recite the elements of a cause of action." AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012). Instead, "a complaint alleging a Monell claim must pair general averments of a policy or custom with particular examples." Est. of Osuna v. Cty. of Stanislaus, 392 F. Supp. 3d 1162, 1175 (E.D. Cal. 2019). In this case, the complaint's "general averments" are conclusory, and its "particular examples" are non-existent. It thus fails to state a Monell claim.

### 3.    Count Four

In Count Four, Plaintiffs assert a supervisory liability claim against Barker. FAC ¶¶ 65–81. Plaintiffs allege that Barker, the "highest-ranking supervisor" on site at Santa Rita during Nelson's incarceration, "was directly responsible for the failures at intake by his personnel" and "participated in and was the supervisor over the response to the homicide of Nelson." Id. ¶ 68.

To state a supervisor liability claim, a plaintiff must show that (1) the supervisor "was personally involved in the constitutional deprivation, or (2) a sufficient causal

connection exists between the supervisor's wrongful conduct and the constitutional violation." Felarca v. Birgeneau, 891 F.3d 819–20 (9th Cir. 2018) (citation omitted).  If a subordinate committed a constitutional violation, supervisor liability "depends on whether [the supervisor] set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." Blankenhorn v. City of Orange, 485 F.3d 463, 485 (9th Cir. 2007); see also Keates v. Koile, 883 F.3d 1228, 1243 (9th Cir. 2018).  Bare allegations that a supervisor "knew or should have known" about the constitutional violation are insufficient. See Krainski v. Nev. Ex rel. Bd. of Regents, 616 F.3d 963, 969 (9th Cir. 2010) (internal quotations omitted).

Plaintiffs' allegations against Barker are devoid of any detail.  See FAC ¶¶ 65–81.  Plaintiffs do not allege any facts to support the claim that (1) Barker was personally involved with any constitutional violation or (2) a sufficient connection exists between Barker's wrongful conduct and a constitutional violation committed by a subordinate.  Indeed, with respect to the second theory, Plaintiffs have failed to plead that any of Barker's subordinates committed a constitutional violation.  As a result, Plaintiffs have necessarily failed to plead that Barker could be liable for a constitutional violation committed by a subordinate.  Plaintiffs' supervisory liability claim thus fails.[9]

### C.      State Law Claims

Plaintiffs assert two state law claims against County Defendants: negligence and failure to provide medical care under California Government Code § 845.6.  FAC ¶¶ 82, 90.  County Defendants argue that the Court should dismiss those claims because (1) several statutes immunize them from liability and (2) Plaintiffs fail to plead sufficient facts to support the claims.  MTD 13–16.

For the reasons discussed below, statutory immunities significantly foreclose the

---

[9] It is unclear whether the complaint also alleges a separate failure to train claim.  See FAC ¶¶ 65–81; Opp. at 10–11.  To the extent that Plaintiffs do assert such a claim, it fails for the same reasons as the supervisory liability claim—no well-pled facts support it.

United States District Court
Northern District of California

state law claims.  To the extent that they do not, Plaintiffs fail to plead sufficient facts to support them.

### 1.    Statutory Immunities

County Defendants cite several California statutes that they contend "immunize both the County and its employees" from Plaintiffs' state law claims.  MTD at 13–14.  County Defendants are correct that the statutes significantly narrow Plaintiffs' claims.

### a.    Cal. Gov't Code § 820.8

Section 820.8 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person."  Cal. Gov't Code § 820.8.  However, a public employee may be liable for "injury proximately caused by his own negligent or wrongful act or omission."  Id.

Relying on § 820.8, Defendants argue that "to the extent Plaintiffs' [state law] claims are predicated upon supervisor or vicarious liability, such claims are not recognized under state law."  MTD at 14 (citing Cal. Gov't Code § 820.8).  Plaintiffs do not address the effect of § 820.8 in their opposition.  See Opp. 11–13.  In any event, Defendants are correct.  To the extent that Plaintiffs' state law claims are predicated on supervisor or vicarious liability, § 820.8 bars those claims.

### b.    Cal. Gov't Code § 844.6

Section 844.6 provides that a "public entity is not liable for: (1) An injury proximately caused by any prisoners.  (2) An injury to any prisoner."  Cal. Gov't Code § 844.6 (a)(1)–(2).  But nothing in § 844.6 "exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission."  Id. § 844.6(d) (emphasis added).  Section 844.6 also excludes claims brought under § 854.6.  Id. § 844.6(a).

Here, Plaintiffs' negligence claim against Alameda County falls squarely within the scope of § 844.6, as Plaintiffs seek to hold a public entity liable for an injury to a prisoner.  See Hernandez v. Cty. of Santa Clara, No. 5:19-CV-07888-EJD, 2020 WL 7227158, at *7 (N.D. Cal. Dec. 8, 2020) ("California Government Code § 844.6 makes public entities

immune from liability for an injury to 'any prisoner,' which includes jail detainees."). But § 844.6 does not foreclose claims against public employees for acts of negligence, and Plaintiffs allege that Egan and Barker committed various negligent acts that caused Nelson's injuries. Nor does § 844.6 foreclose Plaintiffs' claims against Alameda County based on § 854.6, as those claims are excepted from the scope of § 844.6. Accordingly, § 844.6 bars Plaintiffs' negligence claim against Alameda County, but it does not foreclose the negligence claims against Egan and Barker or the § 854.6 claims against Alameda County, Egan, or Barker.[10]

### c.   Cal. Gov't Code § 855.6

Section 855.6 provides that "[e]xcept for an examination or diagnosis for the purpose of treatment," public entities and public employees acting within the scope of their duties are not liable for failing to perform an adequate examination to determine whether an individual has a "physical or mental condition that would constitute a hazard to the health or safety of himself or others." Cal. Gov't Code § 855.6.

Viewing the complaint in the light most favorable to Plaintiffs, § 855.6 does not foreclose Plaintiffs' claims at this stage. Plaintiffs allege that in admitting Nelson to Santa Rita Jail, Deputy Defendants did or should have examined Nelson and Blake for purposes of treatment. In particular, Plaintiffs' allegations could be fairly read as alleging that Deputy Defendants failed to adequately examine Nelson and Blake to determine what type, if any, of mental health treatment they should have received. See FAC ¶ 83. County Defendants may renew their § 855.6 arguments in the future, but they do not provide a basis for dismissal at this stage.[11]

### d.   Cal. Gov't Code § 855.8

---

[10] Plaintiffs argue that the County is vicariously liable for Egan and Barker's actions under Cal. Gov't Code § 815.2. Opp. at 11–12. But the specific immunities set forth in § 844.6 supersede the "general liability" provisions of § 815.2. See Wright v. State of California, 122 Cal. App. 4th 659, 671–72 (2004).

[11] For similar reasons, County Defendants' claim that they are entitled to immunity under Section 856.4 misses the mark. MTD at 14. Section 856.4 creates immunity for "an injury resulting from the failure to admit a person to a public medical facility." Cal. Gov't Code § 856.4. Plaintiffs' allegations here do not involve admission (or lack thereof) to a public medical facility.

United States District Court
Northern District of California

Section 855.8 provides that neither a public entity nor a public employee acting within the scope of their employment "is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or from failing to prescribe for mental illness or addition." Cal. Gov't Code § 855.8(a). Section 855.8 includes exceptions for negligent acts, but the exceptions apply only to acts related to prescribing and "administering any treatment prescribed for mental illness or addition." Id. § 855.8(c)–(d).

Section 855.8 forecloses some but not all of the theories underlying Plaintiffs' state law claims. There are multiple theories that underlie the claims, including failure to provide adequate treatment, failure to house intoxicated inmates separately, and failure to perform adequate monitoring. See FAC ¶ 83. To the extent that Plaintiffs' state law claims are based on a failure to diagnose Nelson or Blake's mental illness, § 855.8 forecloses those theories. See Hernandez, 2020 WL 7227158, at *7 (section 855.8 immunizes deputies from claims based on failure to diagnose mental illness). Plaintiffs' other theories survive.

### e.    Cal. Gov't Code § 856

Section 856 provides that neither "a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment: (1) Whether to confine a person for mental illness or addiction. (2) The terms and conditions of confinement for mental illness or addiction." Cal. Gov't Code § 856(a)(1)–(2).

Section 856 does not foreclose Plaintiffs' claims at the pleading stage. County Defendants argue that their actions amounted to "determining the 'terms and conditions of confinement for mental illness.'" MTD at 13–14. Viewing the allegations in the light most favorable to Plaintiffs, however, it is not clear that Defendants' actions involved "determining the 'terms and conditions of confinement for mental illness." Indeed, one of Plaintiffs' primary claims is that the County Defendants failed to consider Nelson's mental illness when determining his placement at Santa Rita Jail. This does not suggest that

1   County Defendants' actions involved determining the "terms and conditions of
2   confinement for mental illness."  It suggests the opposite: that Nelson was treated no
3   differently than the typical pre-trial detainee.  Accordingly, § 856 does not foreclose
4   Plaintiffs' claims at the pleading stage.[12]

### f.   Summary

6   To sum up the effect of the foregoing statutory immunities on Plaintiffs' state law
7   claims, Plaintiffs' negligence claim against the County is barred under § 844.6.  To the
8   extent that Plaintiffs assert vicarious liability claims, § 820.8 forecloses them.  And § 855.8
9   bars Plaintiffs' claims to the extent that they are based on a failure to diagnose Nelson or
10  Blake's mental illness.

### 2.   Adequacy of The State Law Claims

12  The next question is whether Plaintiffs have adequately alleged claims under state
13  law based on their remaining theories of liability.  For the reasons discussed below, they
14  do not.

### a.   Count Five

16  In Count Five, Plaintiffs allege multiple theories of negligence against County
17  Defendants.  See FAC ¶¶ 83–87.  Many of these theories are foreclosed by the statutory
18  immunities available to County Defendants.  The remaining theories are that County
19  Defendants failed "to respond to emergent situations properly," failed to "place Blake in a
20  sober cell," failed to monitor the cell, and failed to adequately train employees.  See FAC
21  ¶¶ 83–84.

22  Negligence "consists of a failure to exercise the degree of care in a given situation
23  that a reasonable person under similar circumstances would employ to protect others from
24  harm."  City of Santa Barbara v. Superior Court, 161 P.3d 1095, 1099 (Cal. 2007).  To

---

[12] County Defendants' assertion that Section 820 forecloses Plaintiffs' claims fails for similar
reasons.  MTD at 14.  Section 820 creates immunity from injuries resulting from "the exercise of
[] discretion vested in [a public employee]."  Cal. Gov't Code § 820.2.  Here, the alleged facts do
not establish that County Defendants acted with the requisite discretion to qualify for immunity
under § 820.  See Walsh v. Tehachapi Unified Sch. Dist., 827 F. Supp. 2d 1107, 1122 (E.D. Cal.
2011).

United States District Court
Northern District of California

state a claim for negligence, a plaintiff must show (1) a legal duty to use care, (2) breach of the duty, and (3) that the breach caused the resulting injury.  See Kesner v. Superior Court, 384 P.3d 283, 290 (Cal. 2016).

Plaintiffs fail to state a claim under any of their remaining negligence theories.  The primary reason is that they fail to plead sufficient facts to support their claims.  Plaintiffs' claim that the deputies failed to respond to Nelson's need for medical care following Blake's attack lacks factual support.  For example, Plaintiffs do not sufficiently allege how the deputies failed to provide care for Nelson or what type of care they should have provided.  Similarly, Plaintiffs fail to adequately allege that the decision to cell Blake with Nelson breached any duty owed to Nelson.  No well-pled allegations suggest that Blake posed a potential threat of danger to Nelson.  For the same reason, Plaintiffs' failure to monitor theory fails because "the FAC contains no allegations explaining how Defendants' monitoring was inadequate."  See Hernandez, 2020 WL 7227158, at *7.  And Plaintiffs' failure to train theory is "devoid of any allegations regarding the training or supervision that [Defendants] provided or identifying gaps in [their] training or supervision."  See id. The complaint does little more than recite the elements of the cause of action—and that is insufficient to state a claim.  See FAC ¶ 84; Est. of Miller v. Cty. of Sutter, 2020 WL 6392565, at *17 (E.D. Cal. Oct. 30, 2020) (negligence claims dismissed where "the complaint includes only broad assertions of [] liability, not factual allegations").

### b.      Count Six

In Count Six, Plaintiffs allege that County Defendants violated California Government Code § 845.6 by failing to summon medical care.  FAC ¶¶ 90–95.

Under § 845.6, public entities and public employees are generally not "liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody."  Cal. Gov't Code § 845.6.  However, a public entity and public employee may be liable for a prisoner's injury if (1) "the employee is acting within the scope of his employment," (2) he "knows or has reason to know that the prisoner is in need of immediate medical care," and (3) "he fails to take reasonable action to summon

such medical care." <u>See</u> <u>id.</u>

Plaintiffs fail to state a claim for failure to summon medical care for the reasons stated above.  In large part, the claim is based on County Defendants' alleged failure to adequately diagnose Nelson's mental illness during the intake process.  <u>See</u> Opp. at 14–15. But § 855.8 forecloses relief under that theory.  To the extent that the claim is based on the deputies alleged failure to provide prompt medical care following Blake's attack, Plaintiffs fail to allege sufficient facts to state a claim.  Plaintiffs claim that Egan and Barker "failed to take action," <u>see</u> Opp. at 15, but they fail to provide sufficient factual allegations to support this claim.  The only support comes from the two-sentence assertion that Egan and Barker "delayed their request to paramedics" and "failed to provide any care to Nelson." FAC ¶ 40.  These conclusory allegations fall short of stating a claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants County Defendants' motion to dismiss as follows:

- All claims against Barker are dismissed without prejudice for failure to provide summons.

- All claims against County Defendants are dismissed without prejudice for failure to comply with California Code of Civil Procedure § 377.32.  Plaintiffs are granted leave to file an amended affidavit(s) that complies with § 377.32.

- Counts Two, Three, and Four are dismissed without prejudice for failure to state a claim upon which relief can be granted.

- Count Five is dismissed with prejudice against Alameda County under § 844.6. Further, to the extent that it relies on a failure to diagnosis or treat mental illness theory, Count Five is dismissed with prejudice against Egan and Barker under § 855.8.  To the extent that Count Five is based on Plaintiffs' other theories of liability, it is dismissed without prejudice for failure to state a claim upon which relief can be granted.

1

- To the extent that it relies on a failure to diagnosis or treat mental illness theory, Count Six is dismissed with prejudice under § 855.8.  Count Six is otherwise dismissed without prejudice for failure to state a claim upon which relief can be granted.

- Plaintiffs may file an amended complaint by **November 17, 2021**.

**IT IS SO ORDERED.**

Dated: October 14, 2021

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California